IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT D. KENNEDY,
      Petitioner,

vs.                              Case No.:  3:16cv175/LAC/EMT

SECRETARY FLORIDA DEPARTMENT
OF CORRECTIONS,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus and supporting memorandum, filed pursuant to 28 U.S.C. § 2254 (ECF Nos. 8, 9).  Respondent filed an answer and relevant portions of the state court record (ECF No. 17).  Petitioner filed a reply (ECF No. 22).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 17).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-6058, with one count of escape, a second degree felony, punishable by up to 15-years imprisonment (Ex. A at 1, 3).  On April 1, 2013, Petitioner entered a written plea agreement, pursuant to which he agreed to enter a "straight up" plea of no contest to the charge, and the State agreed that his sentence would be "capped" at five years in state prison (*id.* at 26–30).  At a hearing the same day, the trial court conducted a colloquy and accepted Petitioner's plea (*id.* at 11–25).  On May 8, 2013, the court sentenced Petitioner to five years in prison, with jail credit of 155 days (*id.* at 35–52, 62–69).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-2835 (Ex. A at 81, 89).  Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that the appeal

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (ECF No. 17).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

was "wholly frivolous" (Ex. B).  The First DCA granted Petitioner an opportunity to file a pro se initial brief, and Petitioner did so (Ex. C).  The First DCA affirmed the judgment per curiam without written opinion on July 8, 2014, with the mandate issuing August 5, 2014 (Exs. D, E).  Kennedy v. State, 147 So. 3d 985 (Fla. 1st DCA 2014) (Table).

On August 14, 2014, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. F at 1–30). In an order rendered November 17, 2014, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within sixty days (id. at 34–36).  Petitioner filed an amended motion on April 2, 2015, (id. at 37–66).  The state circuit court summarily denied the Rule 3.850 motion on June 15, 2015 (id. at 121–27).  Petitioner appealed the decision to the First DCA, Case No. 1D15-3114 (id. at 160–61).  The First DCA affirmed the decision per curiam without written opinion on October 27, 2015, with the mandate issuing December 29, 2015 (Exs. G, J).  Kennedy v. State, 179 So. 3d 322 (Fla. 1st DCA 2015) (Table).

On January 26, 2015, during the pendency of Petitioner's Rule 3.850 motion, Petitioner filed a petition for writ of prohibition in the First DCA, Case No. 1D15-

0465 (Ex. K).  The First DCA dismissed the petition on March 13, 2015 (Ex. L).
<u>Kennedy v. State</u>, 164 So. 3d 690 (Fla. 1st DCA 2015) (Mem).

On July 20, 2015, Petitioner filed a petition for writ of habeas corpus in the
First DCA, Case No. 1D15-3523 (Ex. M).  The First DCA dismissed the petition on
August 24, 2015, with a warning that any future filings which the court determined
to be successive or frivolous may result in the imposition of sanctions (Ex. N).
<u>Kennedy v. State</u>, 172 So. 3d 573 (Fla. 1st DCA 2015) (Mem).

Petitioner filed the instant federal habeas action on April 18, 2016 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody
pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death
Penalty Act of 1996 ("AEDPA").  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.
Section 2254(d) provides, in relevant part:

> **(d)**  An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
>> **(1)**  resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the <u>Williams</u> framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies

the legal principle at issue.  Thaler v. Haynes, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); Woods v. Donald, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Woods, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront

the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See* Panetti v. Quarterman, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; *see* Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Harrington, *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

Woods, 135 S. Ct. at 1376 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill v. Mecusker, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance."  Brumfield v. Cain, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g.*, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *See* <u>Cave v. Sec'y for Dep't of Corr.</u>, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit has declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  <u>Gill</u>, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied the AEDPA and § 2254(d), does the court take the final step of conducting an independent review

of the merits of the petitioner's claims.  *See* <u>Panetti</u>, 551 U.S. at 954.  Even then, the

writ will not issue unless the petitioner shows that he is in custody "in violation of the

Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this

standard is difficult to meet, that is because it was meant to be."  <u>Richter</u>, 562 U.S. at

102.

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition

that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[2] thereby giving the State the "'opportunity to pass upon and correct'

alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364,

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S.

270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the

---

[2] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B) (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the

prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." <u>Anderson</u>, 459 U.S. at 7.  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 & n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review

of the issue.[3]  The Supreme Court explained,"[i]f a habeas petitioner wishes to claim

that an evidentiary ruling at a state court trial denied him the due process of law

guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in

state court."  Duncan, 513 U.S. at 365–66.

In Baldwin v. Reese, the Supreme Court again focused upon the requirement

of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present'

a claim to a state court if that court must read beyond a petition or a brief (or a similar

document) that does not alert it to the presence of a federal claim in order to find

material, such as a lower court opinion in the case, that does so."  541 U.S. 27, 32, 124

S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  The Baldwin Court commented that "a litigant

wishing to raise a federal issue can easily indicate the federal law basis for his claim

in a state-court petition or brief, for example, by citing in conjunction with the claim

the federal source of law on which he relies or a case deciding such a claim on federal

grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  With regard

to this statement, the Eleventh Circuit stated in McNair v. Campbell, 416 F.3d 1291

(11th Cir. 2005):

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d [1277,] 1184 [(M.D. Ala. 2004)] (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302–03 (citations omitted).[4]

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501

---

[4] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v. Dugger</u>, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  <u>Bailey</u>, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar.  *Id*.  A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question.  *See* <u>Harris v. Reed</u>, 489 U.S. 255, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. <u>Lee v. Kemna</u>, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5] *Id.* Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. *Id.* Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 497, 111 S. Ct.

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. <u>Marek v. Singletary</u>, 62 F.3d 1295, 1302 (11th Cir. 1995); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir. 1994).

1454, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Ineffective assistance of counsel for misadvice to Petitioner to not accept State's favorable 35-month plea offer."

Petitioner alleges the State conveyed a plea offer to his court-appointed defense counsel, Attorney Scarborough, of 50-months imprisonment, and then subsequently reduced the offer to 35 months (ECF No. 8 at 5; ECF No. 8-1 at 5–6).  Petitioner alleges he told Attorney Scarborough that he would accept the 35-month offer, but Scarborough advised him to decline it, because the sentencing scoresheet prepared by the State, and upon which the State's offer was based, was incorrect, and Scarborough believed that the State would further reduce its offer once the scoresheet errors were corrected (*id.*).  Petitioner alleges he rejected the 35-month plea offer based upon Attorney Scarborough's advice (*id.*).

Petitioner alleges Attorney Scarborough did not address the matter of the incorrect scoresheet until the day of jury selection (ECF No. 8 at 5; ECF No. 8-1 at 5–6).  Petitioner alleges on the day of jury selection, Attorney Scarborough requested a continuance based upon Petitioner's informing her that he intended to retain private counsel (*id.*).  Petitioner alleges Attorney Scarborough advised him that the court likely would not grant a continuance (*id.*).  Petitioner alleges Attorney Scarborough

then advised him to enter an "open" plea to the court based upon the State's new offer of a 5-year cap on Petitioner's sentence (*id.*).  Petitioner alleges the scoresheet errors had not been corrected, so sentencing was deferred to allow for the correction (*id.*).  Petitioner alleges he asked Attorney Scarborough to inform the State and the trial court that Petitioner wished to accept the previously rejected 35-month plea offer, but Scarborough refused to communicate this to the State or the court (*id.*).  Petitioner alleges after he agreed to enter the plea with the 5-year cap, the State corrected the scoresheet, which reduced his lowest permissible sentence from 35.7 to 32.25 months (*id.*).  Petitioner alleges the court sentenced him to the 5-year cap (*id.*).  Petitioner contends Attorney Scarborough was ineffective for advising him to reject the State's 35-month offer (*id.*).

Respondent contends the state court's adjudication of the merits of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law, nor did the adjudication rest upon an unreasonable determination of the facts (ECF No. 17 at 7–15).

1.    Clearly Established Federal Law

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process.  Lafler v. Cooper, 566 U.S. 156, 162–63, 132 S. Ct. 1376, 182 L. Ed. 2d 398

(2012) (citing <u>Missouri v. Frye</u>, 566 U.S. 133, 145, 132 S. Ct. 1399, 182 L. Ed. 2d 379

(2012), and <u>McMann v. Richardson</u>, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d

763 (1970)).  "If a plea bargain has been offered, a defendant has the right to effective

assistance of counsel in considering whether to accept it."  <u>Lafler</u>, 132 S. Ct. at 1387.

The two-part test articulated in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984) applies to claims that counsel was ineffective during

the plea process.  <u>Lafler</u>, 132 S. Ct. at 1384 (applying <u>Strickland</u>'s two-part test to

federal habeas petitioner's claim that counsel was ineffective for advising him to

reject a plea offer); <u>Frye</u>, 132 S. Ct. at 1404, 1409–10 (applying <u>Strickland</u>'s two-part

test to federal habeas petitioner's claim that counsel was ineffective for failing to

communicate a prosecution plea offer before it lapsed); <u>Hill v. Lockhart</u>, 474 U.S. 52,

48, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (applying <u>Strickland</u>'s two-part test to

defendant's challenge to his guilty plea based on ineffective assistance of counsel).


To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient

performance by counsel and (2) a reasonable probability that, but for counsel's

deficient performance, the result of the proceeding would have been different.  466

U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.

The focus of inquiry under the performance prong of <u>Strickland</u> is whether counsel's assistance was reasonable considering all the circumstances and under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 688–89, 691. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one."  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  <u>Strickland</u>, 466 U.S. at 689. "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ." <u>Michael v. Crosby</u>, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting <u>Chandler</u>, 218 F.3d at 1317).

The Supreme Court warned about second-guessing professional judgments made by counsel in a plea situation:

> [T]he decision to plead guilty before the evidence is in frequently
> involves the making of difficult judgments.  All the pertinent facts

> normally cannot be known unless witnesses are examined and
> cross-examined in court. Even then the truth will often be in dispute. In
> the face of unavoidable uncertainty, the defendant and his counsel must
> make their best judgment as to the weight of the State's case. Counsel
> must predict how the facts, as he understands them, would be viewed by
> a court . . . . Questions like these cannot be answered with certitude; yet
> a decision to plead guilty must necessarily rest upon counsel's answers,
> uncertain as they may be. Waiving trial entails the inherent risk that the
> good-faith evaluations of a reasonably competent attorney will turn out
> to be mistaken either as to the facts or as to what a court's judgment
> might be on given facts. That a guilty plea must be intelligently made is
> not a requirement that all advice offered by the defendant's lawyer
> withstand retrospective examination in a post-conviction hearing.

McMann, 397 U.S. at 769–70.

The Eleventh Circuit has commented that "[t]he right to competent plea bargain

advice is at best a privilege that confers no certain benefit," because a defendant "may

make a wise decision" without assistance of counsel or a "bad one despite superior

advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir.

1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than

to one who decides to go to trial, and in the former case counsel need only provide his

client with an understanding of the law in relation to the facts, so that the accused may

make an informed and conscious choice between [entering a plea] and going to trial."

Id. This requires counsel to "offer his informed opinion as to the best course to be

followed" and impart "a general knowledge of the possible legal consequences of

facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high. *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). To establish prejudice, Petitioner must show that there is a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694 ). In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." <u>Hill</u>, 474 U.S. at 59.

### 2. Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of trial counsel ("IATC") as Ground One, D of his amended Rule 3.850 motion (Ex. F at 59–62). In the state circuit court's written decision denying Petitioner's motion, the court correctly stated the deficient performance and prejudice prongs of the <u>Strickland</u> standard as the applicable legal standard (*id.* at 122). The court adjudicated this IATC claim as follows:

### GROUND ONE, D

Defendant claims that trial counsel was ineffective for advising him to decline a 35 month plea offer because it was based on an erroneously calculated scoresheet. Defendant contends that counsel should have taken immediate action to rectify the scoresheet instead of delaying the matter. Defendant alleges that he would have accepted the 35 month offer but for counsel's advice to the contrary.

The record and Defendant's allegations confirm that the scoresheet was miscalculated and was later corrected in Defendant's favor, where Defendant disputed a number of the priors on the scoresheet. (Exhibit B, pp. 7, 9, 13; Exhibit E.) Therefore, Defendant fails to sufficiently allege that his decision not to accept a 35 month plea was based on misadvice of counsel. *See Ramos v. State*, 141 So. 3d 643, 644 (Fla. 4th DCA 2014). Defendant's claim otherwise rests on his contention that counsel should have immediately rectified the scoresheet. Defendant's allegations and assertions fail to state a claim against counsel, as preparation of the scoresheet is the responsibility of the state attorney. *See* § 921.0024(3), Fla. Stat.; Fla. R. Crim. P. 3.704(d).

(Ex. F at 125–26). The First DCA affirmed the circuit court's decision without written opinion (Ex. G).

The state court record shows that on December 27, 2012, the court set Petitioner's case for the court's criminal docket (referred to as a "docket day" on the court's Progress Docket Report) on March 20, 2013, and for a jury trial on April 1, 2013 (*see* Ex. A, Progress Docket Report). Prior to the March 20, 2013 court date, the State Attorney's Office prepared a Criminal Punishment Code Scoresheet, which calculated Petitioner's sentence points as 75.6, resulting in a lowest permissible

sentence of 35.7 months (*see* Ex. A at 31–34, Ex. F at 137). Petitioner was present at the March 20 court date (*see* Ex. A, Progress Docket Report). By the end of that proceeding, the case was set for jury selection on April 1, 2013 (*see id.*), indicating that Petitioner rejected the 35-month plea offer.

The facts do not suggest that Attorney Scarborough's performance during the plea negotiations was deficient in the <u>Strickland</u> sense. There is no dispute that Attorney Scarborough informed Petitioner about the State's formal plea offers and provided her advice as to whether Petitioner should accept or reject them. Her advice was based upon her knowledge that the State had offered a 50-month sentence, but then lowered the sentence to 35 months, which was the lowest guideline sentence reflected in the State's initial calculation of the CPC scoresheet. Attorney Scarborough knew that the State's initial calculation was incorrect, and she predicted that the State would present a new, lower offer once the scoresheet errors were corrected. Obviously, Attorney Scarborough's prediction was wrong, but there are no facts to suggest that at the time she advised Petitioner to reject the 35-month offer, she knew, or reasonably should have known, that the prosecutor was finished making lower offers. Attorney Scarborough's advising Petitioner to reject the 35-month plea offer in the hope of receiving a better offer was not the type of performance that fell

below the wide range of competence demanded of attorneys advising defendant during the plea process.

Petitioner's case proceeded to jury selection on April 1, 2013. At the beginning of the proceedings on April 1, 2013, Attorney Scarborough announced to the court that despite the fact that the defense had announced it was ready for trial, Petitioner desired a continuance because he intended to retain private counsel (*see* Ex. A at 132). The State responded that it was ready for trial (*id.* at 133). The court put Petitioner's case on hold and addressed another case (*id.*). Upon resuming Petitioner's case, Attorney Scarborough announced that the State had offered to cap Petitioner's sentence at 5 years, and Petitioner had agreed to accept that offer.

Petitioner faults Attorney Scarborough for failing to address the scoresheet errors prior to the April 1 jury selection. But even if Scarborough had done so, the facts suggest no more than a mere possibility that the State would have made a lower offer upon re-calculating Petitioner's sentence points. The Strickland standard demands more than a possibility of a different result—it demands a reasonable probability. Here, Petitioner did not present the state court with facts suggesting there was a reasonable probability the State would have made a lower offer even if Attorney Scarborough had pointed out the errors in the CPC scoresheet prior to jury selection.

Obviously the State was still willing to negotiate on the day of jury selection, but instead of continuing in its previous downward direction, the State went the other direction and offered only a 5-year cap, with no agreement as to the particular sentence.  The transcript of the April 1 proceeding suggests that the State was willing to offer only the 5-year cap despite its awareness of the specific scoresheet errors (*see* Ex. A at 13).

Petitioner also faults Attorney Scarborough for failing to inform the State and the trial court, at the April 1, 2013 jury selection proceeding, that Petitioner wished to accept the previously rejected 35-month offer.  However, Petitioner did not show a reasonable probability the State would have re-opened the previously rejected 35-month offer even if Attorney Scarborough had announced that Petitioner would accept it.

Petitioner failed to demonstrate that the state court's adjudication of his IATC claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of Strickland.  Therefore, Petitioner is not entitled to federal habeas relief on Ground One.

B.    Ground Two:  "Trial court erred in its denial of Petitioner's motion for continuance to allow him to hire counsel of his choosing."

Petitioner alleges the trial court erred by failing to grant Petitioner's request for a continuance (ECF No. 8 at 6; ECF No. 8-1 at 23–24; ECF No. 9 at 2–11). Petitioner alleges on the day of jury selection, the State announced that it was amending the information to add a citation to Florida Statutes § 951.24(4) (*id.*). Petitioner alleges his entire defense was based on the theory that the original information did not adequately describe any conduct on his part which violated the statute cited in the original information, Florida Statutes § 944.40 (ECF No. 8-1 at 6). Petitioner alleges that upon the State's announcing the amendment, he needed time to reevaluate his defense theory and prepare a new defense (ECF No. 9 at 2, 4–11). Petitioner alleges he also had concerns about Attorney Scarborough's performance, and he needed additional time to hire private counsel (ECF No. 9 at 2–4). Petitioner further alleges he needed additional time to address the errors in the CPC scoresheet (*id.*). Petitioner claims that he would not have entered the plea and instead would have proceeded to trial if the trial court had granted a continuance (*see* ECF No. 9 at 5, 10–11).

Respondent contends Petitioner's claim presents an issue of purely state law and is thus not cognizable as a federal habeas claim (ECF No. 17 at 15–17). Respondent additionally contends Petitioner's claim is factually incorrect (*id.*). Respondent asserts the trial court never ruled on defense counsel's motion for

continuance, because Petitioner chose to enter a plea prior to the court's ruling on the motion (*id.*).

Petitioner argues in reply that his claim implicates his federal right to counsel of his choice, because one of the reasons he requested a continuance was to seek private counsel (ECF No. 22 at 2–5).

### 1.   Clearly Established Federal Law

Denial of a continuance rises to the level of a constitutional violation only if it is so arbitrary as to violate due process. *See* Morris v. Slappy, 461 U.S. 1, 11–12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994). "Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel." Morris, 461 U.S. at 11 (citing Chambers v. Maroney, 399 U.S. 42, 53–54, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970)). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to assistance of counsel." Morris, 461 U.S. at 11–12 (quoting Ungar v. Sarafite, 376 U.S. 575, 589–90, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)); Hicks v. Wainwright, 633 F.2d 1146, 1148 (5th Cir. 1981)[6] (in habeas corpus context,

---

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of

"not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.") (citations omitted)[7]; Dickerson v. State of Ala., 667 F.2d 1364, 1370 (11th Cir. 1982) (in habeas context, noting the factors to be considered in determining whether accused was deprived the constitutional right to compulsory process by denial of continuance) (quoting Hicks).[8]

To demonstrate that the state court's denial of a continuance violated due process, a habeas petitioner must demonstrate "first, that the trial court abused its discretion and, second, that its action rendered the petitioner's trial fundamentally unfair." Conner v. Bowen, 842 F.2d 279, 283 (11th Cir. 1988) (citation and footnote omitted). For abuse of discretion, the court looks to the record before the state court when the decision was made and whether the state court should have concluded (based on that record) that the denial of a continuance would probably deny a fair trial. Id.; see also Ungar, 376 U.S. at 589 ("There are no mechanical tests for deciding when a

---

business on September 30, 1981.

[7] In Hicks, denial of a continuance to the next day to obtain the testimony of a doctor that the defendant was insane (a doctor who could not testify earlier through no fault of the defendant) "effectively stripped him of any defense he might have had." 633 F.2d at 1150.

[8] The "several factors" include due diligence of the defense, probability of procuring testimony within a reasonable time, specificity with which defense can describe anticipated testimony, degree to which testimony would be favorable to defense, and the unique or cumulative nature of the testimony. Dickerson, 667 F.3d at 1370 (quoting Hicks; other citation omitted).

denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."). To determine whether the trial was fundamentally unfair, the court looks for actual prejudice. Conner, 842 F.2d at 283 (citation and footnote omitted); *see also* Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1326 (11th Cir. 2002) ("[T]o establish that a denial of a continuance was reversible error, a defendant must show that the denial caused 'specific substantial prejudice.'" (quoting United States v. Verderame, 51 F.3d 249, 251 (11th Cir. 1995))). "[R]efusal to grant a continuance may have impeded the petitioner's ability to investigate the case, confront the prosecution's evidence, and present a defense, thus affecting the integrity of the guilt determination," and this would constitute prejudice. Conner, 842 F.2d at 283.

It is well settled that the Sixth Amendment guarantees a defendant the right to a reasonable opportunity to secure counsel of his or her own choosing. *See* United States v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988) (citations omitted). A defendant "does have the right to effective representation by appointed counsel, and this right may be endangered if the attorney-client relationship is bad enough." United States v. Graham, 91 F.3d 213, 221 (D.C. Cir. 1996). However, the right to secure counsel

of one's own choice is not absolute. <u>Gallop</u>, 838 F.2d at 107. When the request is made on the eve of trial, a defendant can substitute new counsel only "when unusual circumstances are found to exist." <u>United States v. Schmidt</u>, 105 F.3d 82, 89 (2d Cir. 1997). The court must balance the right of counsel of choice with the broader interests of judicial integrity. <u>Gallop</u>, 838 F.2d at 107; <u>United States v. Bentvena</u>, 319 F.2d 916, 936 (2d Cir. 1963) (restraints must be put on requests for substitution of counsel so that the right will not be "manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice"). However, where the trial judge receives a "seemingly substantial" complaint from a defendant about his counsel, the court has a duty to inquire into the reasons for the dissatisfaction. *See* <u>United States v. Young</u>, 482 F.2d 993, 995 (5th Cir. 1973); *see also* <u>McKee v. Harris</u>, 649 F.2d 927, 933 (2d Cir. 1981).

2.    Federal Review of State Court Decision

Petitioner raised this claim of trial court error (i.e., failure to grant a continuance) as Issue Two in his pro se initial brief on direct appeal, wherein he argued that the trial court's failure to grant a continuance to enable him to hire private counsel and prepare a defense to the amended information deprived him of his Fifth, Sixth, and Fourteenth Amendment rights to due process and counsel of his choosing

(Ex. C at 16–21).  The First DCA affirmed the judgment of conviction without written opinion (Ex. D).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also* Harrington, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision.  *See* Harrington, 562 U.S. at 98. The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 562 U.S. at 102; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state

court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The First DCA's rejection of Petitioner's claim could have been based upon the theory that the trial court did not deny Petitioner's request for a continuance, rather, Petitioner rendered his request moot by entering a plea prior to the court's ruling on his request. The transcript of the jury selection proceedings on April 1, 2013, shows that Petitioner's case was one of several set for jury selection that day (*see* Ex. A at 11–25). The proceedings began with the State announcing an amendment to the information in Petitioner's case to add a citation to Florida Statutes § 951.24(4) (*see* Ex. A at 3). Upon the State's announcing the amendment, Attorney Scarborough moved for a continuance:

> Your Honor, at this point in time, Mr. Kennedy would like me to request a continuance. This case is a first time up. I know we did announce ready for trial yesterday. Mr. Kennedy told me he would be seeking private counsel. Today he's mentioned other things. So at this point, I'm not quite sure where we're at and I would ask for a continuance.

(Ex. A at 12–13). The State responded that it was ready for trial (*id.* at 13). The trial court requested the status of a different defendant's case (defendant Hick), and then returned to Petitioner's case (*id.*). The State filed the amended information, and then Attorney Scarborough announced that Petitioner wished to enter a plea:

> MS. SCARBOROUGH:  Your Honor, at this time, Mr. Kennedy has —we've had discussions and what we would like to do is he would like to enter a plea straight up to Your Honor, but we would like to have a separate sentencing hearing.
>
> There's a lot—he's pointed out that there's issues with the scoresheet that we would probably like to discuss at that hearing, but he's not okay with some of the charges that are on the scoresheet.
>
> THE COURT:  That's fine.  If that's what he wants to do, he has every right to do so.

(Ex. A at 13–14).  At Petitioner's request, Attorney Scarborough placed on the record

the fact that the State's previous plea offer had been 35.7 months (presumably,

Petitioner hoped that this would persuade the court to adopt that as its sentence) (*see*

*id.* at 15–17).  Petitioner signed the written plea agreement in open court (*id.* at

18–19).  By signing the written plea agreement, Petitioner certified, in two separate

sections of the plea agreement, that he was satisfied with his attorney's advice and

services, and that his attorney had not compelled or induced him to enter the plea

agreement by any force, duress, threats, pressure, or promises (*id.* at 27, 29).

Upon presentation of the written plea agreement to the court, Petitioner was

placed under oath, and the court conducted a colloquy:

> THE COURT:  I am holding a sentence recommendation in my hand regarding your case.  It isn't a recommendation, per se, but there are two things that are important.  It does have a five year state prison cap which was agreed to by the State.  In addition to that, it has a number

of number of terms and conditions that I want to make sure you understand.

So, have you had enough time to sit down and go over this sentence recommendation so that you understand everything that it says?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that's the rights you're waiving, and all the stuff like that.

THE DEFENDANT:  Yes.

THE COURT:  And this is your signature on the last page of the document?

THE DEFENDANT:  Yes, it is.

THE COURT:  All right.  You understand, sir, that by entering into this agreement you give up your right to make the State prove their case against you beyond a reasonable doubt in a court of law?

THE DEFENDANT:  Yes, I do.

THE COURT:  Since there isn't going to be a trial, you're giving up a number of rights:  Such as, the right to put on evidence, to cross-examine evidence, to testify, to exercise your right to remain silent.

You're giving up your right to appeal your guilt or innocence.  Do you understand this?

THE DEFENDANT:  Yes, I do.

THE COURT:  Are you entering this plea freely and voluntarily?

THE DEFENDANT:  Yes.  I am.

THE COURT:  Have you had any medicine, alcohol or any other substances in the last 24 hours which will make it so you do not understand what we're doing here?

THE DEFENDANT:  No, I have not.

THE COURT:  Let the record reflect that he does appear competent to the court.

Are you satisfied with the services of your attorney?

THE DEFENDANT:  Yes, I am.

THE COURT:  Do you understand that if you are not a U. S. citizen any plea like this can be used against you in a deportation proceeding?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Again, this is a plea straight up to the Court, which means the sentence I am going to render is my decision and mine alone.  Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  I do have a maximum of a five year prison cap and I'm not really sure about your scoresheet.  As it is reflected today, the lowest permissible, without a downward departure would be 35.7 months state prison.  You understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Has anyone made you any promises as to what my sentence would be or any promises about anything whatsoever?

THE DEFENDANT:  No, ma'am.

> THE COURT:  With all this being said, is it your intent today, sir,
> to enter a plea of guilty to these charges, because you are indeed guilty,
> or no contest, because it will be within your best interest to do so?
>
> THE DEFENDANT:  No contest, Your Honor.

(Ex. A at 20–22).  The court accepted Petitioner's plea (*id.* at 22).

In presenting the First DCA with his constitutional challenges to the trial court's failure to grant a continuance, Petitioner argued the trial court should not have denied the motion for continuance in light of the State's amending the information, which "chang[ed] the crime charged," and "added an entirely new charge with different elements" (Ex. C at 18–20).

The First DCA could have rejected Petitioner's argument on two grounds. First, the record refuted Petitioner's assertion that the trial court denied the motion for continuance.  The record shows that the court did not rule on the motion.

Second, the State's amendment to the information did not charge a new crime or change the elements of the crime with which Petitioner was charged.  The original information included only a citation to the general escape statute, Florida Statutes § 944.40, and did not include a citation to the statute extending the escape statute to include situations in which a prisoner is on work release, Florida Statutes § 951.24 (*see id.* at 1).  The amended information cited § 951.24(4), which provides:

(4) Any prisoner who willfully fails to remain within the extended limits of his or her confinement or to return within the time prescribed to the place of confinement shall be deemed an escapee from custody and shall be subject to punishment as prescribed by law.

Fla. Stat. § 951.24(4).

Aside from adding the citation to § 951.24(4), the language of the two charging documents remained unchanged. Both documents identified the offense with which Petitioner was charged as escape, and both documents charged the following:

> **ROBERT DOUGLAS KENNEDY, SR, on or about September 19, 2012**, at and in Escambia County, Florida, being a prisoner confined in a prison, jail, private correctional facility, road camp, or other penal institution, operated by the State of Florida, or a county, or operated under a contract with the State of Florida, or a county, to-wit: **Escambia County Work Release Program**, or, while working upon the public roads, or being transported to or from said place of confinement, did unlawfully escape or attempt to escape from such confinement. . .

(Ex. A at 1, 3).

The factual basis and evidentiary basis for the escape charge also remained unchanged. Petitioner was arrested based upon an affidavit of Debra Carter, an employee of the Escambia County Work Release Program, which stated that on September 19, 2012, Petitioner was released from the work release program at 8:00 a.m. to search for a job, and he was scheduled to return at 4:00 p.m. but failed to do so (Ex. F at 143–46). In the written plea agreement, Petitioner agreed that the

probable cause affidavit, which was incorporated by reference into the plea agreement, provided a factual basis for his plea (*see* Ex. A at 26–29).

Petitioner argued to the First DCA that the amendment of the information changed his theory of defense. Petitioner argued that his defense to the original information was that his failure to return to the county detention center at the scheduled time was not a crime under § 944.40 (Ex. C at 10–11). Petitioner argued that his defense to the amended information would have been that the amended information failed to specifically set forth how his conduct violated § 951.24(4) (*id.* at 11–12).

Petitioner had no viable defense to the charge based upon the State's failure to include § 951.24(4) in the original information. State procedural rules provide that an error in or omission of the citation of the statute that the defendant is alleged to have violated is not a ground for dismissing the count or for a reversal of a conviction if the error or omission did not mislead the defendant to his detriment. *See* Fla. R. Crim. P. 3.140(d)(1), (o).

Petitioner knew that he was charged with escape, knew that the escape was from the Escambia County Work Release Program, and knew the essential facts underlying the escape charge from the probable cause affidavit supporting the arrest warrant. In Petitioner's brief to the First DCA, he did not show that the amendment

of the information to correct the omission of the statutory citation misled him in the preparation of his defense. Therefore, the First DCA could have reasonably concluded that the trial court's failure to grant a continuance did not impede Petitioner's ability to prepare a defense, even though the State had just amended the information.

With regard to Petitioner's desire to retain private counsel, Petitioner argued to the First DCA that the trial court failed to conduct a "McKay" inquiry (Ex. C at 16–20). In McKay v. State, 504 So. 2d 1280, 1282 (Fla. 1st DCA 1986), the defendant argued on direct appeal that the trial court's denial of his motion for continuance prior to trial deprived him of his right to counsel of choice. 504 So. 2d at 1282. The First DCA noted that while criminal defendants have the right to a reasonable opportunity to select and be represented by chosen counsel, and the right to a preparation period sufficient to assure at least a minimal quality of counsel, the right is not absolute and at some point must bend before countervailing interests involving effective administration of the courts. *Id.* (citing Birt v. Montgomery, 725 F.2d 587 (11th Cir. 1984)). Thus, when a defendant asks for a continuance on the eve of trial in order to allow time for recently retained counsel to prepare, the court must balance that request against many other factors, such as those outlined in United States v. Uptain, 531 F.2d 1281 (5th Cir. 1976). *See* McKay, 504 So. 2d at 1282. The First

DCA held that the factors to be considered in determining whether the denial of a continuance is error based on the lack of preparation time are: (1) the time available for preparation, (2) the likelihood of prejudice from the denial, (3) the defendant's role in shortening preparation time, (4) the complexity of the case, (5) the availability of discovery, (6) the adequacy of counsel actually provided and (7) the skill and experience of chosen counsel and his pre-retention experience with either the defendant or the alleged crime. McKay, 504 So. 2d at 1282 (citing Uptain, 531 F.2d at 1286–87). In McKay, the First DCA held that the trial court's failure to grant a continuance was not an abuse of discretion, because McKay demonstrated no prejudice from the short time for trial preparation, in light of the following circumstances: (1) McKay shortened the preparation time himself by waiting three months to retain counsel, (2) the case was not complex, but fairly straightforward and neither the availability of discovery nor the ability of appointed counsel was called into question, and (3) there was no evidence that McKay's chosen counsel was especially skilled in cases such as McKay's or that chosen counsel had dealt with McKay or his alleged crimes prior to retention. 504 So. 2d at 1282.

In Petitioner's case, the only information presented to the trial court on the counsel issue was that Petitioner had informed his appointed counsel, Attorney Scarborough, that he intended to seek private counsel (*see* Ex. A at 12). This

information was not sufficient to invoke the court's duty to conduct a formal inquiry. *Cf.* United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973) (the court has a duty to inquire into the reasons for a defendant's dissatisfaction with counsel where the court receives a "seemingly substantial" complaint from a defendant about his counsel).[9]

Further, in Petitioner's brief to the First DCA, Petitioner did not show that any of the McKay factors weighed in his favor, with the exception of perhaps the first factor (the time available for preparation), since less than four months had elapsed between the filing of the charge (on December 18, 2012) and Petitioner's request for a continuance (on April 1, 2013). Moreover, Petitioner did not argue to the First DCA that the trial court's failure to immediately address the continuance issue rendered his no contest plea involuntary.

The First DCA's rejection of Petitioner's claim, that the trial court's failure to grant a continuance violated his federal due process rights and his right to counsel of

_____

[9] Even in his § 2254 petition Petitioner did not allege facts suggesting that he had a "seemingly substantial" complaint about Attorney Scarborough's performance. Petitioner alleged he told Attorney Scarborough he wanted a continuance to seek private counsel because he "believed that private counsel would more effectively represent his interests" (ECF No. 8-1 at 7–8), and he "had concerns regarding his counsel's performance related to the loss of the State's favorable 35-month plea offer and had determined that his interests would be best served by the hiring of private counsel" (ECF No. 9 at 4). These allegations do not suggest the existence of circumstances that rendered the trial court's failure to grant a continuance, to enable Petitioner to seek counsel of his choosing, a violation of his Sixth Amendment rights.

his choice, was not contrary to or an unreasonable application of clearly established federal law.  Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

> C.   Ground Three:  "Ineffective assistance of counsel for not objecting to trial court's interference with right to counsel of his own choosing."

Petitioner contends Attorney Scarborough was deficient for abandoning the motion for continuance (ECF No. 1 at 8; ECF No. 8-1 at 7–8; ECF No. 9 at 11–12).

Respondent contends the state court's rejection of Petitioner's claim was not based upon an unreasonable factual finding, nor was it an unreasonable application of Strickland (ECF No. 17 at 17–19).

> 1.   Clearly Established Federal law

The Strickland standard, set forth *supra*, governs this claim.

> 2.   Federal Review of State Court Decision

Petitioner raised this IATC claim as Ground One, B in his amended Rule 3.850 motion (Ex. F at 47–52).  The state circuit court adjudicated the claim as follows:

> Defendant claims that his trial counsel was ineffective for abandoning a request for continuance for Defendant to retain counsel of his choice.  Defendant alleges that counsel requested the continuance on April 1, 2013, but abandoned the motion without Defendant's consent.
>
> Defendant asserts that he would not have entered a plea had a continuance been granted.  He contends that a continuance would have likely been granted because he was dissatisfied with counsel's services,

which would have led to a *Nelson* inquiry, which would have exposed counsel's lack of reasonable preparation. This part of Defendant's claim is speculative and insufficiently pled. Moreover, Defendant abandoned the request for a continuance when he agreed to enter a plea.

Defendant also contends that had the continuance been denied, the denial would have likely been reversed on appeal. This part of his claim is insufficiently pled, as it fails to show how counsel's performance affected the plea proceeding or that Defendant would not have entered his plea. *See Carratelli v. State*, 961 So. 2d 312, 323 (Fla. 2007).

Defendant also asserts that counsel told him that the trial court would not accept his plea if he stated that he was dissatisfied with her services, and his statement to the trial court that he was satisfied with defense counsel's services was made under duress. At the plea hearing, Defendant affirmed that he was entering his plea freely and voluntarily and was satisfied with the services of his attorney. (Exhibit B, p. 11.) This part of Defendant's claim is insufficient to state a claim of misrepresentation or duress by counsel.

(Ex. F at 123–24). The First DCA affirmed the decision without written opinion (Ex. G).

The state court reasonably concluded that Petitioner failed to show that Attorney Scarborough's announcing Petitioner's desire to enter a plea, instead of proceeding with the motion for continuance, was conduct in which only incompetent defense counsel would have engaged. Petitioner does not dispute that prior to the court's ruling on the motion for continuance, he decided to enter a plea with the State's agreement that his sentence would be capped at 5 years. Petitioner's having made that decision, defense counsel had a duty to proceed with that course of action.

Petitioner failed to demonstrate that the state court's rejection of this IATC claim was an unreasonable application of <u>Strickland</u>.  Therefore, Petitioner is not entitled to relief on Ground Three.

D.    <u>Ground Four:  "Ineffective assistance of counsel for not objecting to jurisdictional defect in trial court proceedings."</u>

Petitioner contends Attorney Scarborough was ineffective for failing to object to an alleged jurisdictional defect in the trial proceedings, namely, the State's amending the information on the day of jury selection (ECF No. 1 at 10; ECF No. 8-1 at 8–9; ECF No. 9 at 13–14).  Petitioner argues that amendment of the information was not valid, because the addition of the citation to Fla. Stat. § 951.24(4) constituted a substantive change in that it materially altered the conduct of which he was accused (ECF No. 8-1 at 8–9; ECF No. 9 at 13–14).  Petitioner argues the amendment was also invalid because the amended information was not filed with the clerk of court until after he entered his plea (*id.*).  Petitioner contends due to the invalidity of the amended information, the trial court lacked jurisdiction to sentence him on the amended information (ECF No. 9 at 13).  Petitioner alleges the original information was also invalid, because it did not allege any specific conduct which contravened the statute cited in the information, Fla. Stat. § 944.40 (the general escape statute) (ECF No. 8-1

at 8–9).  Petitioner alleges he notified defense counsel of these defects, but counsel informed him that the information was properly and legally amended (*id.*).

Respondent contends the state court found, as a factual matter, that Petitioner pleaded to the amended information, and that finding is entitled to deference (*see* ECF No. 17 at 21).  Respondent further contends the state court determined that the State's amendment was proper under state law, and this determination it also entitled to deference (*id.*).  Respondent contends that state court's rejection of Petitioner's claim was not based upon an unreasonable factual finding, nor it an unreasonable application of <u>Strickland</u> (*id.*).

1.    Clearly Established Federal law

The <u>Strickland</u> standard, set forth *supra*, governs this claim.

2.    Federal Review of State Court Decision

Petitioner raised this claim as Ground One, C in his amended Rule 3.850 motion (Ex. F at 52–58).  The state circuit court adjudicated the claim as follows:

> Defendant claims that trial counsel was ineffective for failing to challenge the information.  He alleges that the amended information added section 951.24(4) and was filed with the clerk after he entered his plea.  Defendant appears to be claiming counsel should have challenged the amended information based on it being time stamped by the clerk after he entered his plea.  He insists that he therefore pled to the original information.  The record, however, shows that Defendant pled to the amended information.

Defendant also contends that the addition of the statute number was a substantive change to the information and alleges that the prosecutor misled the trial court on this issue.  This part of the claim is insufficiently pled.  To the extent that Defendant is claiming that counsel should have challenged the information on this ground, he does not allege how he was prejudiced by the amendment.  *See State v. Erickson*, 852 So. 2d 289, 291 (Fla. 5th DCA 2003) (finding an information may be amended as to a substantive matter, unless the defendant would be prejudiced).  Moreover, the record shows that Defendant was not prejudiced by the amendment, as he was advised by the affidavit discussed above [referencing the affidavit of Debra Carter, dated September 20, 2012, which stated that on September 19, 2012, Petitioner was released from the work release program at 8:00 a.m. to search for a job, and he was scheduled to return at 4:00 p.m. but failed to do so (*see* Ex. F at 123, 143–46)] that the basis of the escape charge was his failure to return to the work release program.  *Id.*  Also, the prosecutor brought the addition of the statute to the trial court's attention, and the amended information was accepted.  To the extent that Defendant is claiming that counsel was ineffective for failing to challenge the amended information as defective, he fails to allege circumstances under which the State would have been unable to file another amended information.  *See Ferris v. State*, 996 So. 2d 228, 228–229 (Fla. 1st DCA 2008); *Hope v. State*, 588 So. 2d 255, 257 (Fla. 5th DCA 1991).

(Ex. F at 124–25).  The First DCA affirmed the decision without written opinion (Ex. G).

The state court reasonably concluded that none of the alleged defects in the charging documents provided a meritorious basis for defense counsel to object to amendment of the information.  As discussed *supra* in Ground Two, the State's amendment to the information did not charge a new crime or change the elements of the crime with which Petitioner was charged, and the factual basis and evidentiary

basis for the charge remained unchanged.  Therefore, the amendment was not substantive, and instead was simply a defect in form.

Because the amendment was not substantive, the propriety and validity of the amendment is a matter of state law.  Florida's procedural rules permitted the State to amend the information to include the statutory citation to § 951.24(4).  *See* Fla. R. Crim. P. 3.140(d)(1), (j) (permitting amendment at any time prior to trial for formal defects) & (o) (prohibiting dismissal of an information due to any defect in the form of the information unless the defendant is prejudiced).  With regard to the timing of the State's filing the amended information with the clerk of court, the state court found that the amendment was properly made prior to Petitioner's entering his plea, despite the fact that it was time stamped by the clerk after he entered his plea.  This court must defer to the state court's determination of state law.  The failure by Petitioner's counsel to argue that Petitioner's plea to the amended information was invalid due to the timing issue cannot be deemed deficient performance, and Petitioner cannot show he was prejudiced by counsel's failure to raise that challenge, because it had no arguable basis for success.[10]

---

[10] Many years ago, the Supreme Court of Florida rejected similar arguments in State v. Anderson, 537 So. 2d 1373 (Fla. 1989).  In Anderson, the defendant was charged by information with burglary of a dwelling in violation of Florida Statutes § 810.02(1), (3), a felony of the second degree.  One day prior to trial, the State filed an amended information charging first-degree burglary under § 810.021(1), (2)(a).  Immediately prior to trial, the State and the defendant reached an agreement that the State would proceed on the original burglary charge.  The defendant was tried

and found guilty of the charge in the original information.  The defendant challenged his conviction on the ground that the trial court lacked jurisdiction to convict and sentence him, because the filing of the amended information superseded the original information, so when the State withdrew the amended information and did not re-file the original information, no viable charging document remained.

The Florida Supreme Court held that it had previously adopted a due process standard, instead of a "highly technical and formalistic requirement that every amendment be resworn and refiled."  Anderson, 537 So. 2d at 1375 (citing Lackos v. State, 339 So. 2d 217 (Fla. 1976)).  The court stated:

> Lackos stands for the proposition that the state may substantively amend an information during trial, even over the objection of the defendant, unless there is a showing of prejudice to the substantial rights of the defendant.  This proposition is even more relevant when, as here, the amendment occurs prior to trial.  [Defendant] does not argue, and the district court did not find, that he suffered any prejudice from being tried as originally charged.

> In summation, we agree that the original information was vitiated by the filing of an amended information (second information).  At this point the court had jurisdiction to proceed to trial.  The fact that the amended information was subsequently orally amended did not have the effect of divesting the court of jurisdiction.  [Defendant] argues that the second information was vacated by court order, therefore there was no charging instrument before the court when the defendant agreed to proceed to trial.  In support of his position he refers us to the judge's statement, "Mr. Hesse, vacate and set aside the amended information." This statement, taken in isolation would appear to support his argument. The statement, however, must be read in context of the entire colloquy in which the [defendant] agreed to go to trial on the offense described in the originally filed information. Functionally, as Judge Walden suggested below, the colloquy shows the state agreeing to amend the second (extant) information by charging a lesser offense in return for [defendant's] agreement not to seek a continuance.  This conclusion is consistent with the clear intent of the parties and is supported by analogous case law holding that entry of a plea without objection waives failure of the state to comply with constitutional provisions on filing of informations by authorized prosecutors. *See Gerlaugh v. Florida Parole Commission*, 139 So. 2d 888 (Fla. 1962), and cases discussed therein. *Cf. Suarez v. State*, 95 Fla. 42, 115 So. 519 (1928) (failure to object waives unfiled amendment to information); *Acton v. State*, 457 So. 2d 540 (Fla. 2d DCA 1984) (erroneous statutory citation in information waived by plea without objection and colloquy); *Shanklin v. State*, 369 So. 2d 620 (Fla. 2d DCA 1979), and cases discussed therein (failure to properly allege crime establishing jurisdiction is tacitly amended by factual basis and plea without objection); *Andrews*

The state court reasonably determined that defense counsel was not ineffective for failing to challenge either the amendment of the information, or the trial court's jurisdiction to accept Petitioner's plea and sentence him. Therefore, Petitioner is not entitled to relief on Ground Four.

> E.    Ground Five: "Petitioner's rights to equal protection and due process of the law were violated when trial court predetermined Petitioner's sentence in writing without receiving or considering evidence in mitigation."

Petitioner alleges when he entered his plea on April 1, 2013, he requested that the court defer sentencing to a later date, because the CPC scoresheet contained errors with respect to his criminal history, and he believed that correction of the errors would result in a less severe sentence within the 5-year cap agreed to by the State (ECF No. 8 at 13; ECF No. 8-1 at 9–10; ECF No. 9 at 14–18). Petitioner alleges that although the trial court deferred sentencing to a later date, the judge signed and dated the sentencing scoresheet on April 1, 2013, and, by doing so, imposed a sentence of 60 months on that date (ECF No. 8-1 at 9–10; ECF No. 9 at 14–18). Petitioner contends

---

*v. State*, 343 So. 2d 844 (Fla. 1st DCA 1976) (defendant cannot take advantage of plea entered to unalleged offense); *Johnson v. State*, 190 So. 2d 811 (Fla. 4th DCA 1966) (unauthorized substantive amendment of information prior to trial waived by failure to object), *cert. denied*, 196 So. 2d 925 (Fla. 1967).

Essentially, [defendant's] position is that the trial court erred in not delaying the trial by requiring the state to retype and refile a "new" information even though both parties understood the charge and urged immediate trial. We reject this position.

Anderson, 537 So. 2d at 1375–76 (citations omitted).

the trial court predetermined his sentence before considering mitigation evidence, in violation of his rights to due process and equal protection (ECF No. 9 at 15–18). Petitioner further contends the trial judge's predetermination to sentence him to the maximum sentence agreed to by the State was evidenced by the judge's comment at the sentencing hearing on May 8, 2013, that she believed that the sentence had already been mitigated by 2/3 of the statutory maximum sentence of 15 years, by virtue of the State's agreeing to cap Petitioner's sentence at 5 years (*id.* at 17). Petitioner asserts he presented this challenge to his sentence on direct appeal and in his amended Rule 3.850 motion (*see* ECF No. 8 at 13–14).

Respondent contends Petitioner's claim is unexhausted, because he failed to present it to the state courts and thus procedurally defaulted it (ECF No. 17 at 21–25). Respondent additionally contends the claim is without merit (*id.* at 25). Respondent argues that although the initial version of the CPC scoresheet was signed by the trial court and filed on April 1, 2013, the section for "total sentence imposed" was left blank, because the court had not sentenced Petitioner (*id.*). Respondent asserts the CPC scoresheet was subsequently modified, and Petitioner agreed to the modified version, which was filed on May 8, 2013, the day of the sentencing hearing (*id.*). Respondent contends the modified scoresheet, with the original entries crossed out and corrections added, calculated a lower permissible prison sentence of 32.25

months, and included the total sentence of 60 months imposed by the court on May 8, 2013 (*id.*).

In reply, Petitioner appears to argue that he presented a federal claim in his amended Rule 3.850 motion by arguing that the trial court sentenced him in his absence (*see* ECF No. 9 at 17; ECF No. 22 at 11). Petitioner additionally contends he is entitled to federal review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar (*id.*).

The state court record demonstrates that Petitioner did not fairly present Ground Five to the state courts. On direct appeal, Petitioner did not argue that the trial court violated his federal due process and equal protection rights by predetermining his sentence; in fact, Petitioner did not present any challenge to his sentence on direct appeal (*see* Ex. C).

Additionally, although Petitioner presented a due process challenge to his sentence as Ground Two of his amended Rule 3.850 motion, he did not argue that the court predetermined his sentence, in violation of his due process and equal protection rights; instead, he argued that the trial court sentenced him in his absence (*see* Ex. F at 62–63). Petitioner argued that the filing of the initial CPC scoresheet at 2:12 p.m. on April 1, 2013, constituted entry of his sentence, and at that time, he had left the courthouse and was back at the county jail (*id.*). The claim presented in Petitioner's

Rule 3.850 motion is not the same claim he presents in Ground Five of his § 2254

petition.

Petitioner did not present the state courts with a federal due process and equal

protection challenge to his sentence on the ground that the trial court predetermined

his sentence prior to hearing mitigation evidence and providing Petitioner an

opportunity to correct the errors on the sentencing scoresheet. Therefore, Ground Five

is unexhausted. Petitioner has not alleged cause for his failure to exhaust, nor has he

shown he is factually innocent of his conviction or sentence (assuming arguendo that

an "actual innocence" exception exists as to a non-death sentence).[11]   Therefore,

Ground Five is procedurally barred from federal review.

>    F.    Ground Six:  "Petitioner was deprived of his 14th Amendment right to
>    due process of the law when the charging document was not properly amended
>    prior to entry to [sic] Petitioner's plea and amended charging document is
>    fatally defective."

Petitioner asserts both due process and double jeopardy challenges to his

conviction (ECF No. 8 at 14; ECF No. 8-1 at 10–11; ECF No. 9 at 18–23).  Petitioner

---

[11] The Supreme Court has recognized an "actual innocence" exception to procedural default as to substantive offenses and death sentences.  *See* House v. Bell, 547 U.S. 518, 534, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (citing Schlup, 513 U.S. at 319–22, and Sawyer v. Whitley, 505 U.S. 333, 112 S. ct. 2514, 120 L. Ed. 2d 269 (1992)).  The Supreme Court has not recognized an "actual innocence" exception as to non-death sentences.  Even if the Eleventh Circuit recognized such an exception, it would not apply in Petitioner's case, because his 60-month sentence did not exceed the 15-year statutory maximum.  *See* McCarthan v. Dir. of Goodwill Indust.-Suncoast, Inc., 851 F.3d 1076, 1083 (11th Cir. 2017) (citation omitted).

argues that his conviction violated due process because (1) his conviction under the amended information was invalid because the amended information was not filed with the clerk of court until after Petitioner entered his plea, (2) the amended information referenced both § 944.40 and § 951.24(4), which describe two completely different courses of conduct, (3) the amended information contained no specific description of the conduct he allegedly committed, and (4) the original and amended informations were fatally defective in that the evidence (i.e., Debra Carter's probable cause affidavit) was at material variance with the factual allegations of the charging documents (ECF No. 8-1 at 10–11; ECF No. 9 at 18–23).

Petitioner contends his conviction and sentence under the amended information violated double jeopardy principles because (1) jeopardy attached when he pled to the original information (since the amended information had not been filed with the clerk of court at the time he entered his plea), therefore, he could not be subject to jeopardy under the amended information, and (2) the amended information's reference to two statutory provisions made it appear that Petitioner was convicted and sentenced for two separate second degree felonies for the same criminal episode (ECF No. 8-1 at 11; ECF No. 9 at 18).

Petitioner states he presented his due process and double jeopardy claims on direct appeal, in his Rule 3.850 motion, and in his state habeas petition (ECF No. 8 at 15–16; ECF No. 9 at 18–19).

Respondent contends Ground Six is procedurally defaulted, because Petitioner presented it in his state habeas petition, and the First DCA rejected it on state procedural grounds (ECF No. 17 at 26). Respondent additionally contends Petitioner presents purely state-law-based challenges to his conviction, despite Petitioner's couching his claim in federal terms; therefore, the issues presented in Ground Six are not cognizable on federal habeas (*id.* at 27–29).

With regard to Petitioner's due process arguments, Petitioner presented them in Issues One and Three of his initial brief on direct appeal to the First DCA (Ex. C at 7–16, 21–25). The First DCA affirmed Petitioner's conviction without written opinion (Ex. D).

Despite Petitioner's couching his arguments in terms of federal due process, both in his state appellate brief and his § 2254 petition, the validity of the amended information and the sufficiency of the original and amended informations are purely matters of state law, specifically Rule 3.140 of the Florida Rules of Criminal Procedure and decisions of the Florida courts. Furthermore, Petitioner failed to demonstrate that the First DCA's adjudication of his due process claims was contrary

to or an unreasonable application of "clearly established federal law," as that phrase is used in § 2254(d).  *See* <u>Thaler</u>, 559 U.S. at 47 (the law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue).  Therefore, Petitioner is not entitled to federal habeas relief on the due process claims asserted in Ground Six.

With regard to Petitioner's double jeopardy claims, Petitioner presented those claims to the First DCA in a habeas petition (Ex. M).  The First DCA dismissed the petition, citing <u>Baker v. State</u>, 878 So. 2d 1236 (Fla. 2004) (Ex. N).  In <u>Baker</u>, the Florida Supreme Court held that, with limited exceptions, habeas corpus relief is not available to obtain collateral post-conviction relief for claims that could have been brought in a Rule 3.850 motion.  *See* <u>Baker</u>, 878 So. 2d at 1242.

The First DCA clearly and expressly stated it was relying on a state procedural rule to resolve the federal claims asserted in Petitioner's state habeas petition.  Further, the First DCA's decision on the procedural issue rested entirely on state law grounds and was not intertwined with an interpretation of federal law.  Additionally, the rule that a Florida prisoner may not use a state habeas petition to directly or collaterally attack his conviction, and instead must use direct appeal or a Rule 3.850 motion, is firmly established and consistently followed by the Florida courts.  *See* <u>Baker</u>, 878 So. 2d at 1245–46.  Therefore, the federal claims presented in Petitioner's state habeas

petition, including his double jeopardy claims, are procedurally barred from federal review.  *See* Coleman, 501 U.S. at 734–35 & n.1; Caniff, 269 F.3d at 1247.  Petitioner has not shown cause for, and prejudice from, the procedural default, nor has he shown that he is entitled to federal review of his double jeopardy claims through any recognized exception to the procedural bar.  Therefore,  Petitioner is not entitled to federal habeas relief on Ground Six.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" <u>Buck v. Davis</u>, 580 U.S.—, 137 S. Ct. 773 (2017) (citing <u>Miller-El</u>, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the amended petition for writ of habeas corpus (ECF No. 8) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 16th day of January 2018.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.